UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

ROBERT V. BRUNNER, JR. and                     Case No. 06-12237
CHERYL BRUNNER,
                              Debtor(s).
---------------------------------------------------------
APPEARANCES:

BARBARUOLO LAW FIRM, P.C.                      Barbara Whipple, Esq.
*Attorneys for the Debtors*
12 Cornell Road
Latham, New York 12210


DEILY, MOONEY & GLASTETTER. LLP                Mark D. Nizer, Esq.
*Attorneys for Creditor*
8 Thurlow Terrace
Albany, New York 12203


ANDREA E. CELLI, ESQ.
*Chapter 13 Standing Trustee*
350 Northern Blvd.
Albany, NY 12204


Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Under consideration by the court is confirmation of the chapter 13 plan of Robert V. Brunner, Jr. and Cheryl Brunner ("Debtors"). Objections have been filed by Andrea E. Celli, Chapter 13 Standing Trustee ("Trustee"), and MBNA America Bank, N.A., by eCast Settlement Corporation as its agent ("MBNA"), eCast Settlement Corporation, assignee of GE Money Bank/JC Penney Consumer ("JC Penney"), and eCast Settlement Corporation, assignee of GE Money Bank/Pay Pal ("PayPal") (collectively, "eCast"). Both the Trustee and eCast contend that the Debtors' plan cannot be confirmed because the Debtors have not dedicated all of their

1

projected disposable income to their plan during the applicable commitment period pursuant to 11 U.S.C. § 1325(b)(1)(B).[1] The court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and (L), and 1334.

## FACTS

The facts are not in dispute.[2] To briefly summarize, on August 31, 2006, the Debtors filed their chapter 13 voluntary petition, proposed plan, schedules, and Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form B22C) known as the means test. (Nos. 1 and 3.) Accordingly, this case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective on October 17, 2005. Debtors scheduled unsecured debt of approximately $141,676.39. eCast is the holder of an unsecured claim against the Debtors arising out of the Debtors' use of certain credit card accounts. eCast represents approximately 36% of the unsecured non-priority debt.

The Debtors' plan provides for payments directly by the Debtors to Washington Mutual and Homecomings Financial, the holders of the Debtors' first and second mortgage liens, respectively, and to State Employees Federal Credit Union ("SEFCU"), the holder of a lien against the Debtors' 2003 Dodge minivan. According to Form B22C and schedule J, the Debtors' monthly payment to SEFCU for their automobile loan is $358.19 per month. The Debtors' vehicle loan with SEFCU will mature on or about September 30, 2009, or

---

[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. § § 101 to 1532.

[2] The court assumes familiarity with the Stipulation of Facts filed March 27, 2007 (No. 19), as supplemented by the letter to the court dated October 22, 2007 (No. 32).

approximately month 37 of the plan. The Debtors' plan also provides for the assumption of their lease of a 2004 Dodge Durango with DaimlerChrysler Financial Services. Form B22C and schedule J indicate that the Debtors' monthly lease payment is $392.22. The Debtors' lease will mature on April 1, 2008, or approximately month 20 of the plan.

In addition to the secured obligations the Debtors are paying directly, they are both repaying retirement loans. Robert Brunner is repaying one retirement loan at the rate of $693.33 per month which will be repaid in month 26 of the plan. Cheryl Brunner is repaying three retirement loans at the monthly rates of $117, $30, and $35, respectively, for a total of $182 per month. Mrs. Brunner's loans will be repaid during the term of the Debtors' plan, to wit: months 24, 36, and 51, respectively.

The Debtors' Form B22C indicates the Debtors are "above median debtors."[3] As such, the Debtors' Form B22C also indicates that their applicable commitment period is five years. Line 58 of Form B22C reveals that the Debtors have monthly disposable income of $1,094.14, while line 59 indicates an additional expense claim of $693.33[4] per month for repayment of retirement loans resulting in net monthly disposable income of $400.81.[5] The Debtors' schedules I (Current Income) and J (Current Expenditures) reflect monthly net income of

---

[3]Federal Rule of Bankruptcy Procedure 1007(b)(6) requires that all chapter 13 debtors complete Parts I and III of Form B22C to calculate a debtor's current monthly income and to determine whether a debtor's annualized current monthly income is above or below the median family income of similarly-sized households for the applicable state.

[4]By letter to the court dated and filed October 22, 2007, the parties agreed that the retirement loans at issue in this case are qualified loans under 11 U.S.C. § 362(b)(19). (No. 32.)

[5]It is unclear why Mrs. Brunner's monthly payment of $182 for the repayment of her retirement loans is not included in line 59.

$324.38. While the Debtors' chapter 13 plan proposes monthly plan payments of $378 for a period of 36 months, the Debtors subsequently agreed to increase their monthly plan payment to $401 for a period of 60 months.

eCast filed its objection to the Debtors' plan on October 12, 2006, and the Trustee filed her objection to confirmation on November 2, 2006. The court heard oral argument on the objections of the Trustee and eCast on February 15, 2007. Thereafter, the parties agreed to a briefing schedule for submission of memoranda of law. The final brief was filed on May 29, 2007, at which time this matter was taken under advisement.

## ARGUMENTS

The Creditor's confirmation objection hinges on its belief that the Debtors have failed to provide for the submission of all their projected disposable income to payments to unsecured creditors pursuant to § 1325(b)(1)(B). More specifically, the Creditor takes issue with the fact that the Debtors are not proposing to step up their monthly plan payments to account for the additional projected disposable income they will have available during the term of their plan once their car loan, automobile lease, and retirements loans are paid. The Creditor relies upon the theory espoused in *In re Hardacre*, 338 B.R. 718 (Bankr. N.D.Tex. 2006), and its progeny in support of its position that a debtor's projected disposable income should be determined by reference to one's actual income and expenses as reflected on schedules I and J. The Creditor asserts that *Hardacre* stands for the proposition that disposable income as defined in § 1325(b)(2) is only a starting point, and a debtor's actual current financial picture, as reflected in schedules I and J is, in effect, the end point. Thus, as posited by the Creditor, the Debtors' plan payments should step up by $392 for months 21 through 60, when the Debtors' lease

payments will cease, and by an additional $358 for months 38 through 60, when the Debtors' car loan will be satisfied. The Creditor advances a similar argument with respect to the Debtors' retirement loans relying upon *In re Nowlin*, 366 B.R. 670 (Bankr. S.D.Tex. 2007). The Trustee's arguments parallel those of the Creditor.

Relying upon *Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762 (E.D.Wis. 2007), *In re McGuire,* 342 B.R. 608, 612-613 (Bankr. W.D.Mo. 2006), and *In re Hardacre*, 338 B.R. at 728, the Creditor asserts that debtors may not deduct any transportation ownership costs for purposes of the means test if they in fact did not finance the purchase of, or lease, their automobile. Thus, the Creditor argues it follows that when the Debtors' vehicle loan is satisfied and their lease payments cease, their plan payments should be adjusted upward by corresponding amounts so that all of their projected disposable income is properly devoted to make payments to unsecured creditors.

The Debtors urge the court to adopt the rationale of *In re Alexander* 344 B.R. 742 (Bankr. E.D.N.C. 2006) and *In re Kolb,* 366 B.R. 802 (Bankr. S.D.Ohio 2007), namely that "disposable income" is a historic number based on a debtor's current monthly income as defined in
§ 101(10A) and not the actual current financial picture of a debtor as contained on schedules I and J. Accordingly, the Debtors assert that projected disposable income is a number derived from the past and simply projected into the future. On that basis, the Debtors contend that the financial snapshot taken at confirmation would not take into account any anticipated post-petition changes in their financial situation.

Additionally, the Debtors argue that Form B22C already takes into consideration the

5

retirement of their vehicle loan, automobile lease, and retirement loans during the term of their plan as the means test calls for a debtor to schedule monthly payments on secured claims, but limits the amount to that which is "contractually due" within the 60 months following the filing of the bankruptcy case, divided by 60. It is the Debtors' position that this computation accounts for an increase in the Debtors' disposable income. The Debtors rely upon *In re Brady,* 361 B.R. 765 (Bankr. D.N.J. 2007), in support of their argument. The Debtors assert that because their expenses are calculated over 60 months, the so-called "step-up" has already been factored into the projected disposable income calculation. Thus, there would be no basis to recalculate disposable income during the plan term.

## DISCUSSION

The issue before the court is whether the cash the Debtors are applying to their vehicle loan, automobile lease, and retirement loans during the life of their 60-month plan must be deemed part of the Debtors' disposable income and committed to their plan once these obligations are satisfied.[6] Both eCast and the Trustee argue confirmation of the Debtors' plan must be denied because the Debtors' plan does not propose to "step up" their plan payments as their vehicle loan, automobile lease, and retirement loans are paid. Because eCast and the Trustee object to confirmation of the Debtors' plan, the court may not confirm the plan unless each allowed unsecured claim is paid in full, § 1325(b)(1)(A), or the Debtors devote all projected

---

[6] eCast has also placed in issue the alleged unfair discriminatory treatment afforded to the Debtors' student loans. However, the Debtors have responded that "the student loans are being treated the same as all unsecured creditors and not separately classified as long term debt." (Mem. of Law in Supp. of Debtors' Plan of Confirmation 3.) The court assumes that any order confirming the Debtors' plan will incorporate this treatment. Thus, the court finds the student loan issue moot.

disposable income to be received in the applicable commitment period to make payments to unsecured creditors, § 1325(b)(1)(B). As the Debtors have not proposed a 100% plan, the court must find that all of their projected disposable income to be received in the applicable commitment period is being applied to make payments to unsecured creditors under the plan.

Subsequent to the parties briefing the issue in this case, the court issued *In re Green,* __B.R. __, 2007 WL 4026511(Bankr. N.D.N.Y. Aug. 29, 2007), and *In re McLain*, No 06-13453, 2007 WL 3124688 (Bankr. N.D.N.Y. Oct. 24, 2007). In *Green*, the court agreed, for the most part, with the *Alexander* analysis. More specifically, *Green* held, in relation to the issue in the current case, that disposable income and projected disposable income are interrelated and are based on historical numbers as mandated in § 1325(b). *In re Green,* __B.R. __, 2007 WL 4026511. In *McLain*, the Trustee and eCast, an unsecured creditor, objected to the fact that the Debtors did not propose any increase in their monthly plan payments upon payoff of their automobile loans during the course of their chapter 13 plan. Applying the *Green* holding to the facts in the *McLain* case led the court to conclude that financial events occurring during the life of the case have no relevance to the plan payment necessary for confirmation, and future events simply do not mesh with the backward glance required by § 1325(b)(1)(B) at confirmation. *In re McLain*, 2007 WL 3124688, at *3. Likewise, in the case *sub judice*, the fact that the monies being used to retire the Debtors' car loan, automobile lease, and retirement loans will be freed up during the course of the plan is not an impediment to confirmation for purposes of § 1325(b)(1)(B).[7]

---

[7] The case at bar involves a § 1325(a) and (b) confirmation issue. As the court noted in both *In re Green*, __B.R. __, 2007 WL 4026511, at *8 n.11, and *In re McLain*, 2007 WL 3124688, at *3 n.6, precedent exists for the proposition that § 1325(b) does not apply to a § 1329

eCast's argument regarding transportation ownership expense is not compelling. The crux of eCast's argument is that Debtors may not deduct a standard vehicle expense from income on the means test if their vehicle is owned outright. This same argument was raised in *McLain*, and the court indicated this is a controversial issue without consensus. *In re McLain*, 2007 WL 3124688, at *4 (referencing *In re Hylton*, 374 B.R. 579, 583 (Bankr. W.D.Va. 2007)(examining cases)). As in *McLain*, this issue is not before the court. In the case at bar, it is undisputed that the Debtors do not own the cars in question free and clear, and they are making payments pursuant to a note and lease agreement, respectively. The expenses exist for purposes of the means test. Furthermore, as the Debtors assert, even if the payoff of their various loans during the course of their plan were relevant to a disposable income analysis, the Form B22C process has already factored that in. *In re McLain*, 2007 WL 3124688, at *4 (citing *In re Brady*, 361 B.R. 765 (Bankr. D.N.J. 2007)).

## CONCLUSION

Based on the above and this court's reasoning in its *Green* and *McLain* decisions, the court finds that the Debtors have included all disposable income in their proposed plan. Accordingly, the objections are overruled, and the Debtors' plan is confirmed.

It is so ORDERED.

Dated: December 7, 2007                          /s/ Robert E. Littlefield, Jr.

                                                 Hon. Robert E. Littlefield, Jr.
                                                 U.S. Bankruptcy Judge

---

modification which would mean instead of utilizing a debtor's historical finances, the court would instead look to the accuracy of a debtor's current financial picture  Whether to adopt this reasoning must await another decision on another day.